800 S.E.2d 148

**Mark M. SWEENEY, Appellant/Respondent,**

**v.**

**Irene M. SWEENEY, Respondent/Appellant.**

**Appellate Case No. 2014-001850**
**Opinion No. 5479**

Court of Appeals of South Carolina.

Heard February 13, 2017

Filed April 5, 2017

Rehearing Denied June 23, 2017

70

72

Bruce W. Bannister and Luke A. Burke, both of Bannister, Wyatt & Stalvey, LLC, of Greenville, for Appellant/Respondent.

David M. Yokel, of Greenville, for Respondent/Appellant.

WILLIAMS, J.:

Mark M. Sweeney (Husband) appeals the family court's final divorce decree, arguing the court erred in (1) awarding alimony to Irene M. Sweeney (Wife), (2) apportioning nonmarital property, (3) miscalculating the amount of rental proceeds he deposited in the parties' joint account during the pendency of litigation, (4) holding him in contempt, and (5) awarding Wife attorney's fees. Wife cross-appeals, asserting the family court erred in (1) failing to impute her income at the minimum wage, (2) awarding an insufficient amount of alimony, (3) overvaluing marital property, (4) crediting Husband for rental proceeds, and (5) failing to consider all of the necessary

factors in determining her attorney's fees. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Husband and Wife were married on February 18, 1984. At that time, the couple lived in New Orleans, Louisiana, where Wife worked as a teacher and Husband was a graduate student at Tulane University. In early 1986, they relocated to Greenville, South Carolina, where Wife continued teaching and Husband began working at Fluor Daniel, a large construction firm. Husband subsequently took a job at the South Carolina Department of Commerce in 1990, but he returned to Fluor Daniel in 1996.

In 2000, Husband left Fluor Daniel to start a site selection consulting company named McCallum Sweeney Consulting (MSC), which eventually became successful. Husband and Wife soon amassed a large amount of investment assets, retirement accounts, and whole life insurance policies. By November 2013, Husband reported a gross monthly income of approximately $34,100.

During the marriage, the parties raised three children, all of whom are now emancipated. When their first two children were born in 1984 and 1990, Wife took approximately eight months off from teaching to stay at home. Wife, however, did not return to work after the youngest child was born in 1995. In addition to the marital home in Greenville, the parties purchased two homes in Columbia and Charleston, which were used by their eldest son and daughter when they attended college.

In mid-February 2012, Husband moved out of the marital home and into an apartment. On February 29, 2012, Husband filed an action in the family court, requesting a no-fault divorce, equitable distribution, and joint custody of the couple's then sixteen-year-old child. Wife answered and counterclaimed, seeking a divorce on the ground of adultery, possession of the marital home, joint custody of the minor child, equitable distribution, alimony, and attorney's fees.

On August 20, 2012, the family court issued a temporary order. In its order, the court incorporated the parties' stipulation not to dispose of any marital property during the pendency of the action. Regarding contested issues, the court required Husband to pay $4,000 per month to Wife in tempo-

rary support. Additionally, the court ordered that "[e]ach party ... be advanced $75,000.00 from the parties' joint savings account (the Morgan Stanley account) to cover any expenses incurred up until the merits hearing, inclusive of attorney['s] fees, expert fees[,] or investigative fees." Husband was also to provide the court with an accounting of all rental income or refunds related to the Columbia and Charleston investment homes at the merits hearing.

On August 2, 2013, Wife petitioned the family court for a rule to show cause why Husband should not be held in contempt for removing $41,561.90 from the Morgan Stanley account from October 2012 to July 2013 in willful violation of the temporary order.[1] Husband later admitted he withdrew the funds to pay for education and various expenses of the parties' children.

The family court held a merits hearing concerning the divorce action over five days in 2013 and 2014. At trial, Husband stated he began having an affair with a woman from Illinois in April 2012, but only after he had separated from Wife. According to Husband, his relationship with Wife actually ended in 2007, but they continued living together in the marital home until their children were emancipated. In an earlier deposition, however, Husband admitted to visiting his paramour for about three years prior to his separation from Wife.

On July 22, 2014, the family court issued a final divorce decree, granting Wife a divorce on the ground of Husband's adultery. In the final decree, the court divided the marital estate, apportioning 55% to Husband and 45% to Wife. The court awarded the marital home to Wife, while allocating the Columbia and Charleston properties to Husband. Additionally, the court apportioned a health savings account (HSA) established for the parties' eldest son to Husband.

The court noted Wife reported $6,979 in post-separation monthly expenses on her financial declaration.[2] Excluding

---

1. Wife filed an amended petition on September 20, 2013, alleging Husband removed $54,994.42 from the account.

2. The court made a scrivener's error because Wife actually reported $6,699 in monthly expenses on her April 24, 2015 financial declaration. We address this error in Part II.B, *infra*.

postage, parking, vacations, and individual retirement account (IRA) contributions, the court found Wife had approximately $5,500 in post-separation monthly expenses. After imputing an income of $1,500 per month to Wife, the court ordered Husband to pay $5,000 per month to Wife in permanent, periodic alimony.

With regard to Wife's contempt petition, the family court found Husband in willful contempt of its temporary order for making unauthorized withdrawals from the Morgan Stanley account. The court required Husband to reimburse $30,591.29 to Wife—45% of the $72,480.65 that Husband withdrew from the account since the temporary order, with a $4,500 credit for rental proceeds from the Charleston home he deposited into the account. The court also required Husband to pay $3,310 in compensatory attorney's fees to Wife relating to the contempt action.

Finally, the court awarded $15,000 in attorney's fees and costs related to the divorce action to Wife. Husband and Wife each filed a motion to alter or amend judgment, and the family court denied the motions on August 13, 2014. This cross-appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, the appellate court reviews factual and legal findings de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Although we have the authority to make our own findings of fact, "we recognize the superior position of the family court judge in making credibility determinations." *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). Therefore, the appellant bears the burden of convincing this court that the family court committed error or the preponderance of evidence is against the court's findings. *Id.*

## LAW/ANALYSIS

### I. Husband's Appeal

On appeal, Husband argues the family court erred in (1) awarding alimony to Wife, (2) apportioning nonmarital property, (3) miscalculating the amount of rental proceeds he deposited in the Morgan Stanley account during the pendency of

litigation, (4) holding him in contempt, and (5) awarding Wife attorney's fees. We address each argument in turn.

## A. Alimony

■ Husband first argues the family court erred in awarding permanent, periodic alimony to Wife. We disagree.

■ "Permanent, periodic alimony is a substitute for support which is normally incidental to the marital relationship." *Butler v. Butler*, 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct. App. 2009). "Alimony should ordinarily place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Hinson v. Hinson*, 341 S.C. 574, 577, 535 S.E.2d 143, 144 (Ct. App. 2000) (per curiam). The family court has a duty to formulate an alimony award that is fit, equitable, and just if the claim is well-founded. *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).

In making an alimony award, the family court must consider the following statutory factors: (1) the duration of the marriage, (2) physical and emotional health of the parties, (3) educational background of the parties, (4) employment history and earning potential of the parties, (5) standard of living established during the marriage, (6) current and reasonably anticipated earnings of the parties, (7) current and reasonably anticipated expenses of the parties, (8) marital and nonmarital properties of the parties, (9) custody of children, (10) marital misconduct or fault, (11) tax consequences, (12) prior support obligations, and (13) any other factors the court considers relevant. S.C. Code Ann. § 20-3-130(C) (2014).

Husband raises several points as to why Wife should not be entitled to permanent alimony of $5,000 per month and why she should return any payments made under the temporary order. First, Husband maintains that Wife's gross monthly income is actually $8,210 because, in addition to her imputed income of $1,500 per month, Wife will receive $6,710 per month in investment income based upon the Morgan Stanley account's historical return rate of 6.71%. Second, Husband claims the family court miscalculated Wife's monthly expenses at $5,500, which he contends are actually $4,532 if Wife pays off the mortgage on the former marital home. Third, Husband

states the parties both testified to living an extremely frugal lifestyle during the marriage and Wife will receive over $1.2 million in liquid marital assets to support herself.

We find the family court did not err in awarding alimony to Wife. The family court analyzed the statutory factors extensively in determining its award. Among them, the court stated Husband and Wife were in a long-term marriage of about thirty years, and Husband's adultery contributed to its demise. The court found Wife supported the family in the early years of the marriage while Husband advanced his education and also looked to the vast disparity in the current financial resources of the parties. Contrary to Husband's position that they lived a frugal lifestyle, the court found the parties enjoyed a well-above average lifestyle in the final years of their marriage and regularly enjoyed expensive vacations.

With respect to Husband's claim that the family court erred in failing to consider Wife's expected investment income, we find no error. As Wife points out, the only evidence in the record disputes Husband's claim that she would receive $6,710 per month from her share of the Morgan Stanley account. On a 2014 quarterly financial statement, Wife maintains the income from dividends and interest in the account averaged about $1,282 per month. Based upon Wife's equitable share of the account, her monthly income would equal approximately $897. Moreover, in his November 2013 financial declaration, Husband reported only receiving $785 per month in dividends, interest, trust income, and capital gains. Therefore, we find competent evidence in the record supports the family court's refusal to apply the five-year historical return rate to determine Wife's future monthly investment income.[3]

Furthermore, we find Wife should not be required to pay off the mortgage on the marital home when Husband's own expert testified about the tax benefits of mortgage interest. We also reject Husband's contention that Wife should be barred from receiving alimony merely because she has substantial marital assets to liquidate. It would be inequitable to require Wife to invade her only assets to support herself while

---

3. However, we further discuss the effect of Wife's expected investment income on her request for a larger alimony award in Part II.B, *infra.*

Husband may save and continue to draw a substantial salary and dividends from his company. Accordingly, we affirm the family court's decision to grant alimony to Wife.

## B. Apportionment

Husband next argues the family court erred by including two pieces of nonmarital property in the marital estate and crediting them against him. We address Husband's argument as it relates to each asset in turn.

▇ With certain exceptions, marital property is "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation." S.C. Code Ann. § 20-3-630(A) (2014). "The family court does not have authority to apportion nonmarital property." *Gilley v. Gilley*, 327 S.C. 8, 11, 488 S.E.2d 310, 312 (1997).

### 1. Health Savings Account

▇ Husband first claims the family court erred in apportioning the HSA established for the parties' son because it is nonmarital property. We agree.

▇ An HSA is "a trust created or organized in the United States as a healthy savings account exclusively for the purpose of paying the qualified medical expenses of the *account beneficiary*." 26 U.S.C. § 223(d)(1) (2006) (emphasis added). "HSAs encourage individuals with high-deductible health plans to save for healthcare expenses by offering tax-preferred treatment for their savings." *In re Mooney*, 812 F.3d 1276, 1279 (11th Cir. 2016) (per curiam). "Although the beneficiary of an HSA may use the funds for any purpose, ... expenditures used for anything other than qualified medical expenses generally are taxable as gross income and are subject to an additional 20 percent tax." *Id.* (internal citation omitted).

On appeal, Husband argues he presented uncontested testimony that he opened the HSA for the health expenses of the parties' eldest son using his social security number. Husband also testified that, although his name is on the HSA and he contributes money to it, his son is its sole owner and beneficiary.

We agree with Husband—and Wife's counsel conceded at oral argument—that the $15,491 in the HSA is nonmarital property belonging to the parties' eldest son. Therefore, we reverse the family court's decision to include these funds in the marital estate.

### 2. Columbia Home

 Husband also argues the family court erred in including their eldest son's interest in the Columbia home in the marital estate. We disagree.

In his brief, Husband contends the Yale Avenue home in Columbia is jointly owned by him, Wife, and their eldest son. Consequently, Husband asserts the family court should not have included their son's one-third interest in the property's equity as marital property.

Upon our review of the record, however, we cannot find any deed, documentation, or testimony showing the parties' son owns any portion—let alone a one-third interest—of the Yale Avenue home. Indeed, the parties' financial declarations do not indicate such a proposition. Furthermore, Husband and Wife noted in their stipulation of assets that the Yale Avenue home was jointly owned without any mention of their son. Therefore, because we are limited to reviewing evidence placed in record, we find Husband has failed to carry his burden in showing the family court committed error. *See Lewis*, 392 S.C. at 392, 709 S.E.2d at 655.

### C. Miscalculation

 Husband next contends the family court erred in crediting him with only $4,500 in rental proceeds that he deposited into the Morgan Stanley account. We find this issue is unpreserved.[4]

Husband argues he testified at the merits hearing that the tenants of the Charleston property pay him $2,150 in monthly rent. Moreover, Husband notes that Wife confirmed he received approximately $2,100 per month in rent from the property. Therefore, Husband claims the court miscalculated

---

4. Nevertheless, we address Wife's concerns with this credit in Part II.D, *infra.*

the amount of rental proceeds he deposited into the Morgan Stanley account during the two years of litigation, and this court should credit him with $55,000 instead of $4,500.

In reviewing the record, however, we find Husband did not raise this argument in his Rule 59(e) motion. Because the family court did not have the opportunity to rule upon this issue or correct any alleged mistakes in its final order, we find it is unpreserved for our review. *See Widman v. Widman*, 348 S.C. 97, 118–19, 557 S.E.2d 693, 704–05 (Ct. App. 2001) (finding husband's argument that the family court made a mathematical error was unpreserved for appellate review because he failed to argue the position in the lower court).

### D. Contempt

 Husband asserts the family court erred in finding him in contempt. We disagree.

 "An adult who willfully violates, neglects, or refuses to obey or perform a lawful order of the court . . . may be proceeded against for contempt of court." S.C. Code Ann. § 63-3-620 (Supp. 2016). A willful act, for contempt purposes, is defined as one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Spartanburg Cty. Dep't of Soc. Servs. v. Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988) (per curiam). To find one in contempt of court, the record must clearly reflect contemptuous conduct. *Henderson v. Henderson*, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989).

On appeal, Husband argues the family court erred in finding him in contempt for withdrawing funds for the children's education and other expenses in violation of the temporary order because his actions were not done with a "bad purpose." Husband also states he did not withdraw the funds to benefit him and kept meticulous records for reconciliation purposes to maintain the integrity of the account. Further, Husband contends he and Wife previously agreed to pay for their children's college expenses.

We find the family court did not err in finding Husband in contempt. The temporary order clearly prohibited the parties

from disposing of any marital property, subject to certain specific exceptions that do not apply here. Moreover, Husband could have sought a modification of the temporary order to pay for the children's expenses out of the Morgan Stanley account. We also decline to create a rule of law in which parties cannot be held in contempt when they do not intend to benefit themselves by violating a court order. Because Husband willfully violated the temporary order by withdrawing marital funds, we affirm the family court's decision to find him in contempt.

### E. Attorney's Fees

■ Last, Husband asserts the family court erred in awarding attorney's fees to Wife. We disagree.

■ In determining whether to award attorney's fees, the family court should consider the following factors: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

Husband argues Wife should not be entitled to attorney's fees because she received over $1.2 million in liquid marital assets as a result of the equitable distribution. Thus, Husband states Wife has enough funds to pay for her attorney's fees and costs. Furthermore, Husband claims both parties received beneficial results, emphasizing that he received a 55% share of the marital estate.

We find the family court properly awarded Wife a portion of her attorney's fees. In its order, the court addressed the *E.D.M.* factors in determining whether to award attorney's fees. The court first found the parties had the ability to pay their own fees based upon the equitable distribution of the marital assets. However, the court looked to the vast disparity in income between the parties—$35,000 per month for Husband and between $350 and $1,500 per month for Wife. The court also found Wife received greater beneficial results in proving entitlement to permanent, periodic alimony. Additionally, we find Wife was successful in receiving a divorce on the ground of Husband's adultery when he sought a no-fault

divorce. Although Husband received a larger percentage of the marital estate at 55%, he was the predominant income earner for the family since 1995. Therefore, we concur in the family court's decision to order Husband to contribute towards Wife's attorney's fees. *See Susan R. v. Donald R.*, 389 S.C. 107, 117, 697 S.E.2d 634, 639–40 (Ct. App. 2010) (finding the family court did not err in ordering husband to contribute towards wife's attorney's fees even though both parties received beneficial results).

## II. Wife's Cross-Appeal

In her cross-appeal, Wife argues the family court erred in (1) failing to impute her income at the minimum wage, (2) ordering an insufficient alimony award, (3) overvaluing pieces of marital property, (4) crediting rental proceeds to Husband, and (5) failing to consider all of the necessary factors in determining her attorney's fees. We address each argument in turn.

### A. Minimum Wage

Wife first contends the family court erred in failing to impute her income at the minimum wage. We disagree.

In determining alimony, the family court must consider "the employment history and earning potential of each spouse" and "the current and reasonably anticipated earnings of both spouses." S.C. Code Ann. § 20-3-130(C)(4), (6) (2014). Thus, "it is proper to consider a supported spouse's earning capacity and impute income to a spouse who is underemployed or unemployed." *Marchant v. Marchant*, 390 S.C. 1, 9, 699 S.E.2d 708, 713 (Ct. App. 2010).

In its order, the family court imputed a monthly income of $1,500 to Wife based upon Husband's expert's testimony at trial. Wife argues the expert's testimony was speculative because he did not perform a professional determination that she could make $18,000 per year. Husband, however, counters that competent evidence exists in the record to support the family court's decision, including Wife's recent employment history as a garden center worker at $8 per hour and as a tutor at $25 per hour. Further, Husband maintains Wife would

earn substantially more than $1,500 per month if she became recertified as a public school teacher.

In our view, the family court did not err in failing to impute Wife's income at the minimum wage. We find evidence in the record supports the family court's conclusion that Wife has the ability to earn at least $1,500 per month. Therefore, we affirm on this issue.

## B. Alimony Award

■■ Wife next argues the family court erred in awarding only $5,000 per month in permanent, periodic alimony when the evidence supported a larger award. We disagree.

Aside from failing to impute her income at the minimum wage, Wife contends the family court did not account for all of her reasonably anticipated expenses, including IRA contributions, vacations, and postage. Moreover, Wife argues the family court did not consider the fact that the parties lived a well-above average lifestyle and took many vacations averaging about $24,000 per year. Husband's expert also conceded that, assuming the mortgage on the marital home and health insurance were included, Wife's monthly expenses would be over $7,000, and Husband would have about $8,000 remaining each month after expenses to pay an alimony award.

We find the family court's alimony award is equitable and just under the circumstances of this case. *See Allen*, 347 S.C. at 184, 554 S.E.2d at 424 (stating the family court has a duty to formulate an alimony award that is fit, equitable, and just if the claim is well-founded). Wife reported approximately $6,670 in monthly expenses on her financial declaration, which included IRA contributions and the marital home's mortgage. Because we affirm the court's imputation of income to Wife at $1,500 per month and Wife's $5,000 monthly alimony award, we likewise find that Wife's monthly expenses are sufficiently accounted for in the family court's ruling. Moreover, in disputing Husband's appeal of the alimony award, Wife admits she would earn monthly investment income from her share of the Morgan Stanley account, a consideration the family court did not explicitly mention in making its award. We find this income—in addition to the aforementioned income—adequately accounts for Wife's monthly expenses. Therefore, because

the amount is fair and supported by the evidence, we affirm the family court's alimony award.

## C. Valuation of Marital Property

Wife maintains the family court erred in its valuation of certain marital assets. We address each asset in turn.

### 1. 2012 Toyota Prius

Wife argues the family court erred in its valuation of a 2012 Toyota Prius. We disagree.

In its order, the family court found the value of the 2012 Toyota Prius that Husband purchased for Wife was $30,000. Wife notes, however, that Husband testified the Prius was worth $25,000, and he submitted an asset description showing the car having a value of $25,611. In Wife's trial exhibit, she submitted the value of the Prius was $18,049. Thus, Wife contends the family court erred in failing to value the Prius within the range that was supported by the evidence.

We find the family court did not err in valuing the Prius at $30,000. In reviewing the record, Husband submitted a trial exhibit in which he claimed the original value of the Prius in February 2012 was $33,500. The court's finding that the car's value was $30,000 at the time of filing was within the range as provided by the evidence. Accordingly, we affirm on this issue. *See Reiss v. Reiss*, 392 S.C. 198, 205, 708 S.E.2d 799, 802 (Ct. App. 2011) (holding the family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of the evidence presented).

### 2. Personal Effects in the Marital Home

Wife next contends the family court erred in finding the personal property in the marital home was valued at $25,000 when the evidence indicated a value of $7,330. We disagree.

Before trial, Wife submitted an exhibit listing the value of various personal effects in the marital home, totaling $7,330. Husband, on the other hand, testified that he believed the contents of the marital home were worth about $80,000.

Again, we find the family court did not err in valuing the contents of the marital home at $25,000. We note that both

parties did not submit values from an appraiser. Although Wife claims Husband's testimony that the property was worth about $80,000 was pure speculation, the figures Wife submitted to the court are also only estimates based upon her opinion as to the value of the property. Because the amount is within the range of the evidence presented to the court, we affirm the valuation. *See id.*

### D. Husband's Rental Proceeds Credit

▆▆▆ Wife argues the family court erred in crediting Husband with $4,500 in rental proceeds he deposited in the Morgan Stanley account. We agree.

The family court's temporary order required Husband to "give an accounting of any rental income or refunds related to [the Columbia and Charleston homes] at the time of the merits hearing." Wife contends Husband placed the rental proceeds from the Charleston home in the Morgan Stanley account and was ordered to provide an accounting to the family court to allow it to divide the funds as part of the equitable distribution. Therefore, Wife argues the court's credit to Husband deprives her of an equitable portion of the rents received during the pendency of the action. Husband counters that he is entitled to these funds because he was subsequently awarded the Charleston home in the final decree.

Upon our review, we find the court erred in granting Husband the credit. The Charleston home's rental proceeds accrued before the final decree. Thus, these proceeds are marital property. Husband admits he deposited all of these rents into the parties' Morgan Stanley account during the pendency of litigation. Because the Morgan Stanley account was divided between the parties in the final decree, we find the rents were properly accounted for in the equitable distribution award and any credit to Husband is a windfall. Thus, we reverse the family court's decision to give Husband the $4,500 credit.

### E. Attorney's Fees

▆▆▆ Last, Wife asserts the family court erred by failing to consider necessary factors in making its attorney's fee award. We disagree.

■ When deciding the reasonableness of a fee award, the court should consider the following factors: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Wife contends the family court erred in stating that each party received a $75,000 advance towards attorney's fees because those funds were also to be used for other costs such as living expenses. Additionally, Wife claims the court failed to consider the nature and difficulty of the case and the time devoted to it. Wife maintains Husband took unreasonable positions throughout the litigation, including contesting the allegations of his adultery, requesting a 60/40 division of the marital property, denying Wife's entitlement to alimony, and disputing the amount of his income.

Upon our review of the record, we decline to increase Wife's attorney's fee award. Contrary to Wife's position, we find it is clear from the context of the temporary order that the $75,000 advances to the parties were to be used for attorney's fees and costs. Paragraph twelve of the order reaffirms our conclusion, stating "[t]he responsibility of either party for said fees is to be determined by the court at the time of the merits hearing."

As previously mentioned in Husband's appeal, we find both parties received beneficial results in this highly contested divorce case. Given the inherent nature of the proceeding, the substantial value of the marital estate, and both parties' positions on the issues, we find Husband was not overly unreasonable in litigating the issues. Therefore, we affirm the amount of the family court's award.

**CONCLUSION**

In Husband's appeal, we reverse the family court's inclusion of the $15,491 in the parties' son's HSA account as part of the marital estate. As to Wife's cross-appeal, we reverse the family court's decision to grant Husband a $4,500 credit for the Charleston home's rental proceeds. Therefore, we order the equitable distribution award be modified consistent with this opinion.

Based on the foregoing analysis, the family court's divorce decree is

**AFFIRMED IN PART and REVERSED IN PART.**

HUFF and SHORT, JJ., concur.