**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

In the Matter of Lauren Martel, Esquire, Appellant.

Appellate Case No. 2019-001233

———————

Appeal From Beaufort County
Peter L. Fuge, Family Court Judge

———————

Unpublished Opinion No. 2023-UP-254
Heard May 11, 2022 – Filed June 28, 2023

———————

**REVERSED**

———————

Dayne C. Phillips, of Price Benowitz, LLP, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General Mark Reynolds Farthing,
both of Columbia, for the State of South Carolina.

———————

**PER CURIAM:** This case involves a family court judge's direct contempt citation against Appellant, attorney Lauren Martel. Martel argues the family court erred in finding her in criminal contempt at a hearing in which the judge's impartiality and temperament were questioned. We agree, and we reverse the finding of contempt.

The first family court judge assigned to hear the emergency motion in this contentious custody litigation properly recused herself "to avoid any appearance of impropriety" when Martel's client, Tara Rhoten (Mother), expressed concerns

about the first judge's familiarity with the family of Kenneth Burr (Father). The then-chief administrative judge for Fourteenth Circuit family court matters stepped in to the January 10, 2019 emergency hearing and rescheduled the matter for the following week. At that time, Martel advised that this second judge might have a conflict as well. In response, the family court instructed her to "file something. We want it in writing."

The following day—January 11—Martel emailed the scheduling clerk—copying the family court judge, Father's counsel, and others—and identified several issues she believed necessitated the second judge's recusal as well. We will not detail all of the concerns here, but the email included an allegation that the second judge "appears to be practicing law in this case rather than presiding over this serious matter in [an] unbiased manner" possibly due to his close relationships with Father's family and counsel and the judge's personal bias against Mother's attorney, Martel.

On January 14, Martel filed a motion titled "Notice to Recuse to Continue and Order" seeking recusal on several grounds; the motion was accompanied by Mother's affidavit supporting her recusal request and seeking a change of venue. Martel also attached her own affidavit in support of recusal and a venue change. Both affidavits noted the judge's relationships with Father's family and Father's counsel; Mother's affidavit made a number of other troubling claims. The family court addressed the recusal motion at a January 15 hearing and found Martel in criminal contempt after she declined to answer the court's hostile questions about her affidavit. Concerned that she had a professional responsibility to her client not to become a witness in the case, Martel offered to withdraw her affidavit.

The family court subsequently instructed the bailiff to take Martel into custody and told her he was reporting her to the supreme court. When she again emphasized that she did not want to become a witness to the detriment of her client, the judge responded that Martel was already a witness due to "the allegations about [him]" and noted, "I'm gonna call the Supreme Court and see what we're gonna do about you." Later that day, the judge issued a handwritten order of contempt ordering Martel to pay a $500 fine by 12:00 p.m. on January 16, 2019. The order further stated:

> The Defendant's Counsel Lauren Martel, Esquire has
> engaged in indignities that have interfered with the
> Court's ability to administer to [sic] judicial functions.
> The attorney refused to comply with a court order and

defied the authority of this court.  The attorney was rude
and disrespectful towards the court.  She constantly
spoke out of turn and interrupted this court.

On January 22, the Chief Justice issued an order prohibiting this family court judge from acting as chief judge for purposes of administering the underlying child custody action from which Martel's contempt citation arose.  The Chief Justice's order designated an out-of-circuit family court judge to act as administrative judge for matters involving Mother and Father's case.

On March 8, the family court judge filed his formal order of contempt, claiming Martel's affidavit "made numerous false allegations" and contained "slanderous and disrespectful unfounded allegations about this Judge claiming that [he was] bias [sic] and prejudice [sic] against her and her client, Tara Rhoten."  The court found Martel "defiantly refused to take the stand to be questioned about the affidavit."  The family court judge's written order of recusal from all matters involving Martel followed on March 13.

On March 14, Martel renewed her prior motion to reconsider the finding of criminal contempt, noting the family court did not address certain issues she had raised and asserting she had been denied due process.  On July 18, the family court denied the timely motion to reconsider; Martel appealed seven days later.

## I.  Contempt

We find the family court erred in holding Martel in criminal contempt.

"An adult who wilfully violates, neglects, or refuses to obey or perform a lawful order of the court" may be charged with contempt.  S.C. Code Ann. § 63-3-620 (Supp. 2022) (found within the chapter addressing the administration of the Family Court).  But, "the record must clearly reflect contemptuous conduct." *Sweeney v. Sweeney*, 420 S.C. 69, 82, 800 S.E.2d 148, 155 (Ct. App. 2017).  "A willful act, for contempt purposes, is defined as one 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.'" *Id.* (quoting *Spartanburg Cnty. Dep't of Soc. Servs. v. Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988) (per curiam)).

"The burden of proof for civil contempt is clear and convincing evidence, and the burden for criminal contempt is beyond a reasonable doubt." *Daily v. Daily*, 432

S.C. 608, 627, 854 S.E.2d 856, 867 (Ct. App. 2021). "Contempt is an extreme measure; this power vested in a court is not lightly asserted." *Noojin v. Noojin*, 417 S.C. 300, 306, 789 S.E.2d 769, 772 (Ct. App. 2016) (quoting *Bigham v. Bigham*, 264 S.C. 101, 104, 212 S.E.2d 594, 596 (1975)).

From the outset of the January 15 hearing, the atmosphere was tense and combative—there was confusion about which orders the parties were discussing, the family court judge and attorneys talked over each other multiple times, and the family court referenced a constitutional provision that neither party raised and had no relevance to the family court matter. Although the family court judge initially properly cautioned the attorneys and parties about "order and decorum," the judge's own behavior during the proceeding was concerning. In addressing Mother's motion to recuse, the family court discussed Martel's and Mother's affidavits at length and vehemently and intemperately denied all allegations set forth in the affidavits. After this heated discussion, Martel asked for a break to regain her composure, and the family court summarily denied her request. However, the court did grant Martel's subsequent request for a bathroom break.

Following this recess, the judge called Mother to the stand and essentially cross-examined her about the allegations set forth in Mother's affidavit, interrupting the witness multiple times as she attempted to answer the court's questions. Six pages in to the court's questioning, the judge asked Mother, "Now, what other reasons do you believe—what other facts do you have that would indicate I wouldn't be fair?" Mother responded, "The—just the way you're acting right now," noting the court's bullying behavior.

The attorneys then questioned Mother about her affidavit. When Mother stepped down from the witness stand after Father's attorney questioned her, she commented, "Again, bullying." The judge responded by asserting Mother had alleged he was a bully but had "offered no proof of that." The court advised Mother he was considering holding her in contempt, noting, "You have to follow the rules. This is a court of law." The judge then turned to Martel, stating, "That goes for you too, please. Now, I'm gonna call you to the stand."

Martel responded by asking what order of the court Mother had violated. This angered the judge, who responded by demanding that Martel take the stand to discuss the allegations raised in her own affidavit. The family court accused Martel of making conclusory and slanderous allegations in her recusal filings but stated from the bench that he would recuse himself "from ever hearing one of [Martel's] cases." The court's subsequent March 13 order noted the judge believed

he could "no longer be fair or impartial on any case wherein, Lauren Martel, Esquire, appear[ed] before [him]." Still, even after stating from the bench that he would "do an order" of recusal, the family court continued to demand that Martel take the stand to testify about her affidavit.

When Martel asked whether she needed to obtain her own lawyer, the family court declined to respond but refused to give her an opportunity for a recess to contact counsel or otherwise assess whether she should testify—the court simply demanded an immediate "yes or no." And, the family court ignored Martel's expressions of concern regarding the duty she owed Mother not to act as a witness in the case. We find that when Martel expressed concern that she might need an attorney or that the Rules of Professional Conduct might bar her from acting as a witness in her client's case, the family court should have given her the opportunity to seek counsel and consider whether she was able to properly obey the court's demands. While Martel's own behavior during this proceeding certainly was not perfect, our review of the transcript reveals the behavior of the family court judge was vastly more problematic. *See, e.g.*, *State v. Cooper*, Op. No. 2019-UP-049 (S.C. Ct. App. filed Mar. 13, 2019) ("Attorneys are placed in precarious positions when forced to repeatedly call a court's attention to its own errors.").

## II. Jurisdiction

The State argues this court must dismiss this matter because Martel failed to properly serve her notice of appeal on the State, a necessary party. We disagree. The procedural posture of this case is odd, and we have been unable to locate a specific statute, appellate court rule, or case addressing the identity of the "adverse party" in an attorney's appeal from a criminal contempt citation at a family court hearing such as this one.

Rule 203(b)(1), SCACR, addressing appeals from the court of common pleas, provides, "A notice of appeal shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment." A notice of appeal in a family court matter (other than a juvenile matter) must be served within thirty days as well. Rule 203(b)(3), SCACR. And, for appeals from the court of general sessions, the notice of appeal "shall be served on all respondents within ten (10) days after receipt of written notice of entry of the order or judgment" or "within ten (10) days after the sentence is imposed." Rule 203(b)(2), SCACR. Rule 202(a), SCACR, designates the "adverse party" as the respondent, but the respondent in this family court matter—Father—is not truly the adverse party here with respect to the finding of criminal contempt.

Seven days after receipt of the order denying her motion to reconsider, Martel filed her notice of appeal, along with proof of service noting she had served the family court judge and Beaufort County Court Clerk of Court with the notice. On August 14, a Senior Assistant Deputy Attorney General informed this court that he would be representing the State. On September 11, an Assistant Attorney General also filed a notice of appearance on behalf of the State. The accompanying letter stated, "Neither the State of South Carolina nor Attorney General Alan Wilson are parties to this appeal. However[,] the State has an important interest in the matter as it involves a criminal contempt conviction." The State noted it was appearing in the case pursuant to section 1-7-40 of the South Carolina Code (2005), which provides the Attorney General "shall appear for the State in the Supreme Court and the court of appeals in the trial and argument of all causes, criminal and civil, in which the State is a party or interested . . . . " Martel timely served the family court judge with her notice of appeal, and the Office of the Attorney General was on notice of Martel's appeal shortly thereafter. Thus, we decline to find a jurisdictional defect. Notably, the State's correspondence demonstrates it was in no way prejudiced by any failure of service, and the family court judge—as an agent of the State, the claimed interested party—was in fact served with the notice of appeal.

We agree with the State that the process for appealing an order of contempt should be better delineated, and it would be helpful to have clarification identifying who "the respondent" or "adverse party" is for purposes of the Appellate Court Rules in a case such as this one. However, it is not this court's place to declare such a rule—particularly in light of the odd manner in which this hearing was conducted and the family court's problematic behavior. This issue would be better addressed through a statutory definition or by proposed amendment of our court rules followed by the necessary legislative review.

**Conclusion**

For the foregoing reasons, the family court's finding of criminal contempt is

**REVERSED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**