715 S.E.2d 662

**Virginia McCOMB, Respondent,**

**v.**

**Ryan CONARD, Appellant.**

**No. 4877.**

Court of Appeals of South Carolina.

Heard Dec. 8, 2010.
Decided Aug. 24, 2011.
Rehearing Denied Sept. 22, 2011.

Pope D. Johnson, III, of Columbia, for Appellant.

Bradford Neal Martin, of Greenville and Rebecca R. West, of Lexington, for Respondent.

Thomas M. Neal, III, of Columbia, for Guardian ad Litem.

KONDUROS, J.

Ryan Conard (Father) appeals the family court's decision regarding custody, a restraining order, and attorney's fees in this relocation case. We affirm.

## FACTS

Father and Virginia McComb (Mother) met in 2001, when both were living in Columbia. At the time, Mother was nineteen years old and a student a Midlands Technical College. Father was about the same age and a student at the University of South Carolina. In August 2002, Mother discovered she was pregnant. On March 28, 2003, their daughter (Child) was born. Mother and Child lived with Mother's father (Grandfather). Mother and Father continued to date and eventually became engaged.

In December 2004, the parties ended their relationship due to several issues. Following Father's graduation from college, he moved to Rock Hill for a job in Charlotte in the summer of 2005. For much of the time after he moved, Father had custody of Child Thursday evening through Sunday morning by mutual agreement of the parties. Father would travel to Columbia when he had custody of Child and stay in a house he owned there.[1]

In the fall of 2006, Mother informed Father she wanted to move to Florida once she graduated from the University of South Carolina in May 2007. She intended to live with her mother and stepfather until she could get established there. Mother believed her employment opportunities in Florida exceeded those in Columbia because she was eligible to teach school in Florida but not South Carolina.

---

1. Father's college roommate also lived in the house.

On December 20, 2006, Mother filed an action seeking sole custody of Child, child support, and attorney's fees. Father filed an answer and counterclaim contending it would not be in Child's best interest to move to Florida. He requested sole or joint custody, with Child remaining in South Carolina and both parties contributing to her support.

A few weeks before trial, Mother married Gurpreet Khalsa (Stepfather). At trial, Stepfather testified he is a financial advisor at Smith Barney in Orlando, Florida and prior to that he was a professional musician earning a substantial salary. He has owned a large home in an upper-middle class subdivision for almost ten years. Mother testified because she was qualified to teach in Florida but not in South Carolina, her beginning pay range in Florida would be far greater than her earning capacity in Columbia. Mother and Stepfather testified they intended for Child to attend a private school within walking distance of Stepfather's home. Stepfather also indicated Child had already made friends in the neighborhood. The Guardian ad Litem (GAL) recommended awarding Mother custody but qualified it as a "lukewarm recommendation." He based his recommendation on the fact that Mother had been Child's primary caregiver.

The family court granted the parties joint legal custody and permitted Mother to take Child with her to Florida to live with her and Stepfather. The family court found Father earned a gross monthly income of $6,108 a month from his employment and his interest on a trust. The family court also provided for Father to have visitation and pay child support. Additionally, the family court ordered Father pay attorney's fees of $20,995.02 to Mother's attorney. The family court also restrained the parties from having Child "on an overnight basis in the presence of an adult party of the opposite sex to whom the parties are not related by blood or marriage, or any individual with whom he or she is romantically involved."

Father filed a Rule 59(e), SCRCP, motion for reconsideration. Following a hearing, the family court orally ruled it was granting Father's motion. Mother filed a motion to reopen the hearing and vacate the oral order. Following another hearing, the family court issued an order denying Mother's motion to reopen but also denying Father's motion for recon-

sideration, thereby reversing its oral order. This appeal followed.

## STANDARD OF REVIEW

 The appellate court reviews decisions of the family court de novo. *Lewis v. Lewis*, 392 S.C. 381, 390, 709 S.E.2d 650, 655 (2011). The appellate court generally defers to the factual findings of the family court regarding credibility because the family court is in a better position to observe the witness and his or her demeanor. *Id.* at 391, 709 S.E.2d at 655. The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported by the preponderance of the evidence. *Id.*

## LAW/ANALYSIS

### I. Custody

 Father argues the family court erred in giving Mother custody of Child for several reasons. Specifically, he contends the family court erred in considering the *Latimer*[2] factors instead of the best interests of Child. Additionally, he maintains the family court incorrectly applied the tender years doctrine because it has been abolished in South Carolina. Further, he contends the family court erred in failing to conclude it was in Child's best interest to remain in South Carolina. We disagree.

 In a child custody case, the welfare of the child and what is in the child's best interest is the primary, paramount, and controlling consideration of the court. *Davis v. Davis*, 356 S.C. 132, 135, 588 S.E.2d 102, 103–04 (2003).

> The family court considers several factors in determining the best interest of the child, including: who has been the primary caretaker; the conduct, attributes, and fitness of the parents; the opinions of third parties (including GAL, expert witnesses, and the children); and the age, health, and sex of the children.

*Patel v. Patel*, 347 S.C. 281, 285, 555 S.E.2d 386, 388 (2001). Although a parent's morality is a proper factor for consider-

---

2. *Latimer v. Farmer*, 360 S.C. 375, 602 S.E.2d 32 (2004).

ation, it is only relevant if it either directly or indirectly affects the welfare of the child. *Davenport v. Davenport*, 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975). "Custody of a child is not granted [to] a party as a reward or withheld as a punishment." *Id.*

"Cases involving the relocation of a custodial parent present some of the knottiest and most disturbing problems that our courts are called upon to resolve." *Rice v. Rice*, 335 S.C. 449, 453, 517 S.E.2d 220, 222 (Ct.App.1999) (internal quotation marks omitted). In determining whether to allow a custodial parent to relocate with a minor child, our supreme court "has stated we are no longer to be guided by the presumption against relocation, and should instead focus on the children's best interests." *Walrath v. Pope*, 384 S.C. 101, 105, 681 S.E.2d 602, 605 (Ct.App.2009) (citing *Latimer*, 360 S.C. at 381, 602 S.E.2d at 34–35). "[B]ecause '[f]orcing a person to live in a particular area encroaches upon the liberty of an individual to live in the place of his or her choice,' the court's authority to prohibit an out-of-state move 'should be exercised sparingly.'" *Rice*, 335 S.C. at 453–54, 517 S.E.2d at 222 (quoting *VanName v. VanName*, 308 S.C. 516, 519, 419 S.E.2d 373, 374 (Ct.App.1992)) (second alteration by court). "[T]he question of whether relocation will be allowed requires a determination of whether the relocation is in the best interest of the children, the primary consideration in all child custody cases." *Id.* at 454, 517 S.E.2d at 222.

In *Rice*, this court found that although it was not "a true relocation case," cases involving the relocation of custodial parents were helpful in determining whether it was in the children's best interest to require them and their mother to move back to South Carolina. *Id.* at 456, 517 S.E.2d at 224. The court found, "one of the primary concerns in most true relocation cases—the need to maintain a relationship with the non-custodial parent—is also of great importance in this case." *Id.* The court further noted "South Carolina case law provides little guidance as to how a court should determine whether an out-of-state move is in the best interest of the children." *Id.*

"[A] determination of the best interest of the children is an inherently case-specific and fact-specific inquiry." *Id.* at 458,

517 S.E.2d at 225. What Father refers to as the *Latimer* factors were summarized by this court in *Walrath:*

[O]ur [s]upreme [c]ourt has acknowledged, without endorsing or specifically approving, factors other states consider when making this determination. For example, our [s]upreme [c]ourt stated the New York Court of Appeals looks at (1) each parent's reason for seeking or opposing the relocation; (2) the relationship between the children and each parent; (3) the impact of the relocation on the quality of the children's future contact with the non-custodial parent; (4) the economic, emotional, and educational enhancements of the move; and (5) the feasibility of preserving the children's relationship with the noncustodial parent through visitation arrangements. Additionally, our [s]upreme [c]ourt noted Pennsylvania courts require the following considerations in relocation cases: (1) the economic and other potential advantages of the move; (2) the likelihood the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a whim of the custodial parent; (3) the motives behind the parent's reasons for seeking or opposing the move; and (4) the availability of a realistic substitute visitation arrangement that will adequately foster an ongoing relationship between the non-custodial parent and the children.

384 S.C. at 106, 681 S.E.2d at 605 (citations omitted).

Although this is not the typical relocation case in which a parent who has custody seeks to move with the child, the same analysis should apply. Therefore, the *Latimer* factors are relevant to this case. As our courts have often noted, the primary factor in child custody cases is always the best interests of the child. Mother has been Child's primary caregiver since her birth. Mother sought the move to Florida based on her belief that she would have better opportunities to obtain a job in her desired field. Further, her husband lives there and also has meaningful employment there. Mother also lived in Florida until the tenth grade and has family members and friends there, including her mother. Moreover, Father has the means to travel to Florida to continue seeing Child the same amount he did when she lived in Columbia. Mother has made Child available for phone calls and video conferencing and the GAL recommended Mother have custo-

dy. Accordingly, we find the family court did base its decision on the best interests of Child. Additionally, nothing indicates the family court relied on the tender years doctrine in making its decision. Based on the facts in this case, the family court did not err in allowing Child to move to Florida with Mother.

## II. Attorney's Fees

 Father maintains the family court erred in awarding Mother attorney's fees because she was not the prevailing party. We disagree.

 The family court has discretion in deciding whether to award attorney's fees. *Donahue v. Donahue,* 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989); *see also Lewis v. Lewis,* 392 S.C. 381, 394, 709 S.E.2d 650, 656 (2011) ("[T]he decision to award attorney fees [ ] rests within the sound discretion of the family court."). In deciding whether to award attorney's fees, the family court should consider (1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the fee on each party's standard of living. *Patel v. Patel,* 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). In determining reasonable attorney's fees, the six factors the family court should consider are "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

The family court did not err in awarding attorney's fees or in the amount of attorney's fees it awarded. It considered all of the appropriate factors and stated why those factors supported awarding Mother attorney's fees. The record contains evidence to support each of the family court's findings. In essence, although Mother did not receive sole custody, she prevailed on the issues. Mother sought to move with Child to Florida, child support, and attorney's fees and she received all of this. Further, Father has the ability to pay the fees. Because the evidence in the record supports the family court's findings as to attorney's fees, the family court was within its

discretion in awarding attorney's fees and calculating the amount.

## III. Oral Order

Father argues the family court erred in reversing its oral order granting the motion for reconsideration. We disagree.

■ "Until written and entered, the trial judge retains discretion to change his mind and amend his oral ruling accordingly." *Ford v. State Ethics Comm'n*, 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001); *see also Bowman v. Richland Mem'l Hosp.*, 335 S.C. 88, 91–92, 515 S.E.2d 259, 260–61 (Ct.App.1999). Because it was an oral ruling, the family court was fully within its rights to change its decision in the written order. Accordingly, this issue is without merit.

## IV. Restraining Order

■ Father argues the family court erred in ordering the parties to restrain from having Child overnight in the presence of an adult of the opposite sex who was not related by marriage or blood to Child because neither party requested it and it is broad and nonspecific. We disagree.

" 'When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.' " *Sherman v. Sherman*, 307 S.C. 280, 282, 414 S.E.2d 809, 811 (Ct.App.1992) (quoting Rule 15(b), SCRCP) (citing Rule 2(a), SCRFC).

Simply because neither party asked for the restraining order in its pleadings does not mean that the family court did not have the authority to order it. Issues were raised during trial as to adults of the opposite sex who were not related by marriage or blood to Child being present overnight around Child. Accordingly, the family court did not err in making such a restriction.

Additionally, Father's argument the restraining order is broad and nonspecific was not raised to the family court. "[W]hen an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review." *Doe v. Doe*, 370 S.C. 206, 212,

634 S.E.2d 51, 55 (Ct.App.2006). "When a party receives an order that grants certain relief not previously contemplated or presented to the trial court, the aggrieved party must move, pursuant to Rule 59(e), SCRCP, to alter or amend the judgment in order to preserve the issue for appeal." *In re Timmerman*, 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct.App. 1998). Thus, this portion of Father's argument is not preserved for our review.

## CONCLUSION

The family court did not err in giving Mother joint custody and allowing her to move to Florida with Child, awarding Mother attorney's fees, or issuing the restraining order. Therefore, the family court's decision is

**AFFIRMED.**

HUFF and LOCKEMY, JJ., concur.