# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Shaundra B. Daily, Respondent/Appellant,

v.

Julian D. Daily, Appellant/Respondent.

Appellate Case No. 2017-001199

Appeal From Pickens County
Karen S. Roper, Family Court Judge

Opinion No. 5801
Heard November 6, 2019 – Filed February 10, 2021

## AFFIRMED AS MODIFIED

Nicole Nicolette Mace, of The Law Offices of Curt
Sanchez, P.A., of West Palm Beach, Florida, for
Appellant-Respondent.

Edward Delane Rosemond, of The Rosemond Law Firm,
PA, and Kimberly Welchel Pease, of Kimberly R.
Welchel, Attorney at Law, both of Seneca, both for
Respondent-Appellant.

Floy Kenyon Anderson, of Kenyon Lusk & Anderson, of
Anderson, Guardian ad Litem, pro se.

**WILLIAMS, J.:** In this cross-appeal from the family court, Julian D. Daily
(Father) argues the family court erred in (1) awarding Shaundra Bryant Daily
(Mother) sole custody of the parties' two minor daughters following her relocation

to Florida, (2) setting the parallel parenting plan and his visitation, (3) finding him in contempt, and (4) ordering him to pay a portion of Mother's attorney's fees and one-half of the guardian ad litem's (GAL) fees. Mother argues the family court erred in failing to order Father to pay the full amount of her attorney's fees. We affirm as modified.

**FACTS/PROCEDURAL HISTORY**

Father and Mother (Parents) married in 2004, and they had two daughters: LGD and ZMD (collectively, Daughters), born in 2006 and 2009. Parents both filed for divorce on January 6, 2012, and subsequently reached an agreement resolving all matters in the divorce. On March 25, 2013, the family court issued an order granting Parents a divorce and adopting their agreement (Divorce Decree). Under the Divorce Decree, Parents had joint custody and Daughters were placed with Mother during the school year; Father had visitation alternating weekends, holidays, and the summer. After the divorce, Mother lived in Pickens, South Carolina, and Father lived in Atlanta, Georgia.

In 2015, Mother filed a complaint requesting permission to relocate to Gainesville, Florida; child support; attorney's fees and costs; and modification of Father's visitation. Mother, a professor, wanted to move because she received a job offer from the University of Florida. Father filed an answer and counterclaim, requesting dismissal of Mother's complaint and seeking full custody of Daughters or, alternatively, joint custody with primary placement. The family court issued a temporary order on March 26, 2015, (1) holding Parents would remain subject to the provisions of the Divorce Decree, (2) requiring Parents attend mediation, and (3) ordering a hearing in the event mediation was unsuccessful. The order also appointed a GAL and established the GAL's hourly rate and a fee cap of $3,500. On August 25, 2015, the family court issued a second temporary order (Temporary Order), which allowed Mother to relocate to Gainesville with Daughters. The court found the move was in Daughters' best interest and consistent with *Latimer v. Farmer*.[1] The Temporary Order gave Father visitation and ordered him to pay child support. Father subsequently moved from Atlanta to Cincinnati, Ohio, without informing Mother or the GAL until after he moved.

Shortly before the final hearing scheduled for June 2016, the family court ordered Father to undergo a psychological evaluation (Evaluation Order) pursuant to Mother's request. The court rescheduled the hearing. Father did not undergo the

---

[1] 360 S.C. 375, 602 S.E.2d 32 (2004).

evaluation.  Parents also filed multiple rules to show cause, which were consolidated and considered at the final hearing.

On March 13, 2017, the family court issued a final order (Final Order) granting Mother sole custody.  The family court found the joint custodial arrangement was no longer in Daughters' best interest and awarded visitation to the Father.  It also instituted a "Parallel Parenting Plan" (Parenting Plan) and required Parents to communicate exclusively through Our Family Wizard[2] (OFW) absent an emergency.  The Parenting Plan also contained a restraining order prohibiting Parents from coming within fifteen feet of each other or having any physical or verbal confrontation.

The family court additionally found Father failed to prove contempt by Mother but found Father in contempt for willfully violating the Divorce Decree and the Evaluation Order.  The family court ordered Father to compensate Mother for enforcing the orders and fined him $1,500 for disobeying the Evaluation Order.  The court also awarded Mother $5,400 in attorney's fees—which included the compensatory contempt award—and ordered Parents to each pay one half of the GAL's fees.

Parents both filed motions to reconsider.  The family court denied Father's motion and partially granted Mother's motion as to summer visitation.[3]  This appeal followed.

**ISSUES ON APPEAL**

I.      Did the family court err in awarding Mother sole custody?

II.     Did the family court err in setting the Parenting Plan and Father's visitation?

III.    Did the family court err in finding Father in contempt for violating the Divorce Decree and the Evaluation Order?

---

[2] Our Family Wizard is a digital program for divorced parents to use to communicate with each other and schedule their children's activities.
[3] In partially granting Mother's motion to reconsider, the family court also corrected typographical errors and made minor changes to the visitation exchange provision.

IV.    Did the family court err in ordering Father to pay $5,400 of Mother's attorney's fees?

V.     Did the family court err in ordering Father to pay half of the GAL's fees?

## STANDARD OF REVIEW

On appeal from the family court, the appellate court reviews factual and legal issues de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). Thus, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011). However, this broad scope of review does not require the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.* at 385, 392, 709 S.E.2d at 651–62, 655. Therefore, the appellant bears the burden of convincing the appellate court that the family court committed an error or that the preponderance of the evidence is against the family court's findings. *Id.* at 392, 709 S.E.2d at 655.

## LAW/ANALYSIS

### I.    Custody

Father asserts the family court erred in awarding Mother sole custody of Daughters. We disagree.

The controlling considerations in all child custody controversies are the child's welfare and best interest. *Divine v. Robbins*, 385 S.C. 23, 32, 683 S.E.2d 286, 291 (Ct. App. 2009); *see also* S.C. Code Ann. § 63-15-230(A) (Supp. 2020) ("The court shall make the final custody determination in the best interest of the child based upon the evidence presented."). "[A] determination of the best interest of the children is an inherently case-specific and fact-specific inquiry." *McComb v. Conard*, 394 S.C. 416, 423, 715 S.E.2d 662, 665 (Ct. App. 2011) (alteration in original) (quoting *Rice v. Rice*, 335 S.C. 449, 458, 517 S.E.2d 220, 225 (Ct. App. 1999)). It is also appropriate to consider the opinions of third parties, including the GAL and expert witnesses. *Brown v. Brown*, 412 S.C. 225, 239, 771 S.E.2d 649, 656 (Ct. App. 2015).

Determination of the child's best interest requires consideration of the "character, fitness, attitude, and inclinations on the part of each parent as they impact the

child" as well as the "psychological, physical, environmental, spiritual, educational, medical, family, emotional[,] and recreational aspects of the child's life." *Woodall v. Woodall*, 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996). Subsection 63-15-240(B) of the South Carolina Code (Supp. 2020) provides additional factors to consider.

"When a party seeks to alter a joint custody arrangement, the party has the burden of establishing a material change of circumstances substantially affecting the child's welfare." *Dixon v. Dixon*, 336 S.C. 260, 263, 519 S.E.2d 357, 359 (Ct. App. 1999). "Such a change in circumstances simply means that sufficient facts have been shown to conclude that the best interests of the child would be served by the change." *Id.*

Cases involving the relocation of a custodial parent are some "of the most challenging problems our family courts encounter." *See Latimer v. Farmer*, 360 S.C. 375, 380, 602 S.E.2d 32, 34 (2004). "The effect of relocation on the child's best interest is highly fact specific. It should not be assumed that merely relocating and potentially burdening the non-custodial parent's visitation rights always negatively affects the child's best interests." *Id.* at 382, 602 S.E.2d at 35. "Relocation is one factor in considering a change in circumstances, but is not alone a sufficient change in circumstances." *Walrath v. Pope*, 384 S.C. 101, 106, 681 S.E.2d 602, 605 (Ct. App. 2009) (quoting *Latimer*, 360 S.C. at 382, 602 S.E.2d at 35).

Our supreme court, without endorsing or enumerating a specific test, has highlighted relevant factors other states consider when confronted with parental relocation. *Latimer*, 360 S.C. at 382–83, 602 S.E.2d at 35–36. These factors are: (1) the economic, emotional, and educational advantages of the move; (2) the child's relationship with both parents and the impact of the move on the non-custodial parent's relationship with the child; (3) the availability and feasibility of a realistic substitute visitation arrangement, including technology, that will adequately preserve and foster the child's relationship with the non-custodial parent; (4) each parent's motive for seeking or opposing the relocation; and (5) the likelihood the move is not the result of a whim but would substantially improve the quality of life for the custodial parent and child. *See id.*

We agree with the family court that Father's and Mother's respective relocations, and inability to communicate and make joint decisions have necessitated Mother having sole custody.

We have concerns regarding Father's failure to foster a positive relationship between Mother and Daughters if Father were awarded custody. The record indicates Daughters' communication with Mother is negatively impacted when they are in Father's custody. For example, there were multiple instances during Father's visitation when he failed to inform Mother of Daughters' whereabouts. Further, in response to Mother's inquiries and questions regarding Daughters, Father would either provide nonresponsive answers, including telling Mother to ask Daughters directly, or would not respond at all. The GAL also expressed concern based on her observations that Father would not encourage Daughters' relationship with Mother. On the other hand, Mother has continuously made appropriate efforts and encouraged the relationship between Father and Daughters. *See* § 63-15-240(B)(6) ("In issuing or modifying a custody order, the court must consider the best interest of the child, which may include, but is not limited to: . . . the actions of each parent to encourage the continuing parent-child relationship between the child and the other parent . . . .").

We also share the family court's concern regarding Father's ability to personally provide for Daughters. *See Housand v. Housand*, 333 S.C. 397, 400–02, 509 S.E.2d 827, 829–30 (Ct. App. 1998) (considering each parents' financial status and ability to provide for the children at the time of the divorce and at the time of trial in a change of custody action). Father testified he was an entrepreneur but was extremely vague regarding his employment and income. The record contains no evidence of Father's earnings from his work and reveals his stated monthly income of $3,000 was provided by his parents (Grandparents). Grandparents also wrote the checks for Father's child support, and the evidence indicates they financially provide for Daughters when they are in Father's care.

We find the record supports the family court's award of sole custody to Mother and shows Daughters were happy, healthy, and well-adjusted to their home and school in Florida. § 63-15-240(B)(10) ("In issuing or modifying a custody order, the court must consider the best interest of the child, which may include, but is not limited to: . . . the child's adjustment to his or her home, school, and community environments . . . ."). Mother's relocation to Gainesville and Father's decision to move from Atlanta to Cincinnati impacted the parties' relationship with Daughters. However, we find the family court's visitation schedule as modified below gives ample opportunity to foster the relationship between Father and Daughters. *See Latimer*, 360 S.C. at 385–86, 602 S.E.2d at 37 (discussing availability and feasibility of a realistic substitute arrangement that will adequately preserve and foster the child's relationship with the non-custodial parent, including technology); *McComb*, 394 S.C. at 424, 715 S.E.2d at 666 (noting the availability of phone calls

and video chatting to help maintain the child's relationship with non-custodial parent).

Based on the foregoing, we find Mother has shown a significant change of circumstances and that it would be in the best interest of Daughters that Mother be awarded sole custody. *Dixon*, 336 S.C. at 263, 519 S.E.2d at 359 ("When a party seeks to alter a joint custody arrangement, the party has the burden of establishing a material change of circumstances substantially affecting the child's welfare."). Accordingly, we affirm the family court.

## II. The Parenting Plan and Visitation Schedule

On appeal, Father raises several challenges to the Parenting Plan and visitation schedule.

"As with child custody, the welfare and best interests of the child are the primary considerations in determining visitation." *Buist v. Buist*, 399 S.C. 110, 122, 730 S.E.2d 879, 885 (Ct. App. 2012), *aff'd as modified on other grounds,* 410 S.C. 569, 766 S.E.2d 381 (2014). When determining visitation in a relocation case, the family court should attempt to alleviate the hardships associated with parents living in separate states as much as possible. *Walrath*, 384 S.C. at 108, 681 S.E.2d at 606 (noting the family court acknowledged the hardships related to parents living in Kansas City and South Carolina and attempted to provide the children with continuous, meaningful contact with their father).

### A. Unnecessary Communication and Failure to Set Specific Dates

Father argues the family court erred in establishing a visitation schedule and parenting plan that necessitates communication and negotiation between Parents by requiring them to "confirm visitation" through OFW. Specifically, Father asserts that the family court's failure to set specific dates for all of his visitation will require Parents to negotiate visitation periods. Father contends this gives Mother the ability to prevent Father from exercising his visitation. Because of these defects, Father argues the current visitation schedule and parenting plan are not in Daughters' best interest.

Under the visitation schedule, Father has visitation during Daughters' Christmas break, Thanksgiving break, spring break, and summer break. During the school year, Father has visitation for one long weekend in September, January, and May (Long Weekend Visitation). The Long Weekend Visitation corresponds with

Labor Day, Martin Luther King, Jr. Day, and Memorial Day.  He also has one unspecified weekend in October, February, and April, which he is required to exercise in Daughters' hometown (Short Weekend Visitation).  Additionally, the visitation schedule requires Father to ensure Daughters attend all previously scheduled activities during his Short Weekend Visitation.  These activities include, but are not limited to, "extracurricular events, educational activities, church activities, sports practices or games, social obligations, or medical appointments."

The visitation schedule and Parenting Plan require Parents to confirm visitation periods through OFW.  Parents are prohibited from scheduling, or allowing others to schedule, elective activities for Daughters during the other parent's time with Daughters unless the other parent provides written permission or the enrolling parent informs Daughters that they will miss any such event, except for Father's Short Weekend Visitation.  The Parenting Plan also requires Parents to notify each other through OFW of any important school or extracurricular events[4] and expressly allows Parents to attend regardless of who has placement of Daughters at the time of the event.

We agree the visitation schedule and Parenting Plan in their current form present issues for these parties who are unable to cooperate and communicate effectively with each other.  Therefore, we modify by adding additional specifics to portions of the visitation schedule and Parenting Plan.  Under the Parenting Plan, Mother is required to advise Father of Daughters' "school enrollment for the following year by March 1 on OFW."  Upon publication of the school calendar, Mother shall timely provide Father with the school calendar within ten days.  Following the receipt of the school calendar, Father shall notify Mother on OFW of the weekends he intends to exercise his Short Weekend Visitation by May 1.  In the event Father chooses not to exercise his Short Weekend Visitation, or any other visitation, he shall notify Mother no later than seven days prior to the visitation period.  In addition, we modify the visitation schedule and Parenting Plan to instruct that Father's Long Weekend Visitation shall begin at 6:00 P.M. on the last day Daughters attend school prior to the weekend and will end at 2:00 P.M. on the day prior to the Daughters returning to school.  Father's Short Weekend visitation will begin at 6:00 P.M. on Friday and will end at 6:00 P.M. on Sunday.

---

[4] Defined as, but not limited to, "baptisms, bar mitzvahs, sporting events, dance recitals, [and] school plays."

### B. Weekend Visitation

Father asserts the family court erred in ordering that he ensure Daughters attend all scheduled activities during his Short Weekend Visitation.  Father also contends that because the Parenting Plan allows both parents to attend such activities, Mother can effectively eliminate Father's personal time with Daughters by scheduling and attending activities.  He also argues this will create situations in which the Parenting Plan's restraining order will be violated.

We find it is in Daughters' best interest to require Father to ensure their attendance of all previously scheduled extracurricular activities and events during his Short Weekend Visitation.  The record shows Daughters enjoy participating in dance, drama, and sports, and Mother only enrolls them in activities in which they are interested.  By taking Daughters to these events, Father attends to Daughters' "psychological, physical, environmental, spiritual, educational, medical, family, emotional and recreational" needs.  *See Woodall*, 322 S.C. at 11, 471 S.E.2d at 157.  However, we modify the Parenting Plan to require Mother to notify Father on OFW of "important school or extracurricular events" that are known when Father selects his weekend visitation.  If Mother learns of an event after Father selects his weekend, Mother must provide notice of the event within twenty-four hours.  In the event Father chooses not to exercise his visitation rights, he shall notify Mother on OFW no later than seven days prior to the visitation period, or within twenty-four hours after Mother notifies him of an event.  As to the Parenting Plan's restraining order, attendance and observation of Daughters' activities does not necessitate Parents coming within fifteen feet of each other.

Next, Father asserts the family court erred in setting his Short Weekend Visitation for regular weekends instead of holiday or teacher workdays in October, February, and April.  He also argues the family court erred in requiring him to exercise those visitation weekends in Daughters' hometown.  We agree in part.

Considering the distance between Parents' homes, we agree with the family court that a standard visitation schedule would be impractical.  The family court found it was in Daughters' best interest to have less frequent exchanges to allow sufficient time to recuperate between visits and to have some visitations with Father locally.  Therefore, the court required Father to exercise his Short Weekend Visitation in Daughters' hometown.  We find this requirement appropriate when balancing the importance of stability with fostering Daughters' relationship with Father.  Further, the record supports this finding as Mother and the GAL expressed concern with the effect traveling to Cincinnati for a weekend every month would have on

Daughters.  *See Woodall*, 322 S.C. at 11, 471 S.E.2d at 157 (stating a child's best interest is determined by considering, among others, the educational, psychological, physical, and emotional aspects of the child's life).  Thus, we find the family court properly considered Daughters' best interest when it restricted Father's Short Weekend Visitation to Daughters' hometown, and we affirm.

However, we agree with Father that the family court erred in limiting his Short Weekend Visitation to two days.  Based on our de novo review, the blanket restriction of Father's Short Weekend Visitation in October, February, and April to two days was improper because Father may choose a weekend coinciding with a school holiday or a teacher workday.  Accordingly, we modify the visitation schedule and Parenting Plan to provide that if Father chooses such a weekend, he shall receive the additional day as part of his Short Weekend Visitation.  A Short Weekend Visitation extended in this manner is still subject to limitations imposed by Daughters' extracurricular activities and events.

Father also argues he should be allowed to drop Daughters off at school at the conclusion of his Short Weekend Visitation instead of exchanging Daughters with Mother on the last night of the weekend.  We disagree.  By returning to Mother the night before school, Daughters return to a familiar environment and can recuperate and resume their routine prior to the start of the school week.  *See Woodall*, 322 S.C. at 11, 471 S.E.2d at 157 (stating a child's best interest is determined by considering, among others, the educational, psychological, physical, environmental, and emotional aspects of the child's life).  Thus, we find it is in Daughters' best interest that Father's Short Weekend Visitation end at 6:00 P.M. on Sunday.

### C. Summer Visitation

Father asserts the family court erred in modifying his summer visitation to allow Mother additional time.  He argues this modification was not in Daughters' best interest because the family court also reduced his school year and Christmas visitation.

Father's summer visitation originally consisted of the entirety of summer break, except the seven days preceding the start of the school year.  However, following Mother's motion for reconsideration, the family court decreased Father's visitation by awarding Mother six additional days in the summer.  The court gave Mother the discretion to exercise this time as a week in July or one weekend in June, July, and August, limited similarly to Father's Short Weekend Visitation.

We find the family court's decision to modify Father's summer visitation was proper. The record demonstrates Mother had very little contact with Daughters during previous summer breaks and Father routinely deflected or failed to answer Mother's questions regarding Daughters' location and well-being. The paramount consideration is the best interest of Daughters. Considering Parents' inability to communicate with each other, it is not in Daughters' best interest to go for a long period without spending time with Mother.

We acknowledge the family court's efforts but find the need for additional modifications to promote Daughters' welfare and alleviate conflicts between the parties. Accordingly, the visitation schedule and Parenting Plan are modified as follows. Daughters shall spend the first seven days of summer break with Mother. In addition to this seven-day-period, Mother shall have an additional weekend with Daughters during the summer break beginning at 6:00 P.M. on Friday and ending at 6:00 P.M. on Sunday. Mother shall notify Father on OFW of the dates for her summer weekend by May 1. Additionally, similar to Father's Short Weekend Visitation, Mother must ensure Daughters attend all previously scheduled activities, such as educational activities, church activities, and sports practices or games, during her summer weekend. Father has a similar duty to notify Mother on OFW of any events when Mother selects her weekend or within twenty-four hours of learning of the event. In the event Mother chooses not to exercise her summer weekend, Mother shall notify Father seven days prior to the weekend or within twenty-four hours for Father notifying her of an event. Father's summer visitation shall begin at 2:00 P.M. on the eighth day of summer break and end at 6:00 P.M. seven days prior to the first day of school. We find these changes allow Daughters time to adjust to the beginning and end of summer break and alleviate unnecessary stressors, such as bringing luggage to school before the break begins. Therefore, Father's summer visitation is accordingly modified.

### D. Holiday Visitation

Father asserts the family court erred in setting his Christmas visitation. We agree. Under the current visitation schedule, Father receives every Thanksgiving holiday, and his Christmas visitation begins at dismissal on the last day of school and ends on December 23. Under that arrangement, there will be years when Father has possibly only one day or less with Daughters for his Christmas visitation. It is in Daughters' best interest to continue to spend time with both parents during the Christmas holiday. Therefore, the visitation schedule is modified as follows.

Father will continue to have every Thanksgiving holiday.  Father's Christmas visitation will begin on December 26 at 2:00 P.M. and end on January 1 at 6:00 P.M.

Based on the foregoing, we affirm the family court's visitation schedule and Parenting Plan as modified.

## III.    Contempt

Father argues the family court erred in finding him in contempt for willfully violating the Divorce Decree and the Evaluation Order.  We disagree.

"An adult who wi[l]lfully violates, neglects, or refuses to obey or perform a lawful order of the court" may be charged with contempt.  S.C. Code Ann. § 63-3-620 (Supp. 2020).  "Once a moving party makes out a prima facie case of contempt by pleading the order and showing its noncompliance, the burden shifts to the respondent to establish his defense and inability to comply."  *S.C. Dep't of Soc. Servs. v. Johnson*, 386 S.C. 426, 435, 688 S.E.2d 588, 592 (Ct. App. 2009).  "To find one in contempt of court, the record must clearly reflect contemptuous conduct."  *Sweeney v. Sweeney*, 420 S.C. 69, 82, 800 S.E.2d 148, 155 (Ct. App. 2017); *Eaddy v. Oliver*, 345 S.C. 39, 43, 545 S.E.2d 830, 833–34 (Ct. App. 2001) (finding the father's testimony established a prima facie showing of contempt and the family court correspondingly erred in not finding the mother in contempt after she presented no evidence to defend or explain her noncompliance).  The burden of proof for civil contempt is clear and convincing evidence, and the burden for criminal contempt is beyond a reasonable doubt.  *Poston v. Poston*, 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998).  Civil contempt is remedial in nature and aims to benefit the complainant, but criminal contempt is punitive and aims to vindicate the court's authority.  *Id.* at 111, 502 S.E.2d at 88.

### A. Violation of the Divorce Decree

Father argues the family court erred in finding him in contempt for violating the Divorce Decree.  The Divorce Decree prohibited the parties from "harass[ing] or burden[ing] the other with excessive or abusive telephone calls or any non-productive or harassing communication."  Specifically, Father asserts the family court failed to cite the communications that violated the provision.  Father contends some of the emails Mother presented as evidence were the subject of a previous contempt action against Father in July 2013 and by failing to cite the contemptuous communications, it is unclear whether the family court relied on this older evidence.  We disagree.

In its Final Order, the family court noted some of the emails relevant to Mother's testimony were previously litigated and specifically stated those emails were excluded from consideration.  As to whether the record supports the family court's finding that Father violated this provision, we find it does.  During a visitation exchange in August 2014, Mother was late in getting Daughters to Father.  For the next two hours, Father sent Mother an email every fifteen minutes telling her how many minutes she was late and that she was not following the court order.  Mother tried to call Father multiple times to try and resolve the issue, but he would not answer despite continuing to send emails.  This is clear and convincing evidence of "non-productive or harassing communication."  Accordingly, the family court did not err in finding Father willfully violated the Divorce Decree, and we affirm.[5]  *See Poston*, 331 S.C. at 113, 502 S.E.2d at 89 ("Civil contempt must be proven by clear and convincing evidence."); *Sweeney*, 420 S.C. at 82, 800 S.E.2d at 155 ("To find one in contempt of court, the record must clearly reflect contemptuous conduct.").

### B. Violation of the Evaluation Order

Father argues the family court erred in finding him in contempt for violating the Evaluation Order because the evaluation was unnecessary and based on false and misleading information.  We disagree.

The facts underlying Father's failure to submit to a psychological examination are not in dispute.  The family court ordered Father to undergo a psychological evaluation prior to the final hearing, and the GAL scheduled an appointment for Father, but Father did not go to the appointment.  The GAL attempted to reschedule with multiple psychologists and informed Father of the potential make-up appointments.  Despite scheduling a make-up appointment, Father still failed to meet with a psychologist and complete an evaluation.  Although the record indicates Father missed the first appointment because he had a flat tire and

---

[5] Father also asserts the family court erred in relying on the GAL's testimony concerning Father's harassing and derogatory emails because the GAL did not give specific examples of the objectionable verbiage.  Because our finding above is dispositive, we need not address this argument.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

was in Tennessee, he offered no explanation for his failure to complete the examination at a later appointment.

We find the record supports the family court's finding of contempt. The family court ordered Father to undergo a psychological evaluation, and he failed to comply. Father did not present any evidence showing he was unable to comply despite a good faith effort, and his objections to the evaluation's necessity and validity, even if in good faith, are not an excuse. *See Sweeney*, 420 S.C. at 82–83, 800 S.E.2d at 155 (affirming the family court's finding of contempt because the husband willfully violated a temporary order despite his argument that he did it without a "bad purpose"). At the time it was issued, the Evaluation Order bore the judicial authority of the family court and required compliance absent a stay of the order's effect. *See Jennings v. Jennings*, 104 S.C. 242, 245, 88 S.E. 527, 528 (1916) ("The orders of the court, even though erroneous, must be respected and obeyed, until vacated or modified by competent authority."). The only acceptable reasons for not complying with the order would be appealing and obtaining a supersedeas—which Father did not do—or being thwarted from obeying the order despite his good-faith effort to comply—which Father has not shown. *See* Rule 241(c), SCACR ("The effect of the granting of a supersedeas is to suspend or stay the matters decided in the order . . . . ."); *Terry v. Terry*, 400 S.C. 453, 456 & n.2, 734 S.E.2d 646, 648 & n.2 (2012) (providing the method for obtaining relief from a family court's temporary order); *Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 760 (Ct. App. 2007) ("Where a contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt." (quoting *Smith-Cooper v. Cooper*, 344 S.C. 289, 301, 543 S.E.2d 271, 277 (Ct. App. 2001))). Accordingly, the record supports the family court's finding of contempt regarding the Evaluation Order, and we affirm.

## IV. Attorney's Fees

Father appeals the family court's award of attorney's fees, asserting the family court failed to properly consider the relevant factors when deciding whether to award attorney's fees and the amount to award. Mother appeals the family court's order, arguing she should have been awarded the full amount of her attorney's fees.

Section 20-3-130(H) of the South Carolina Code (2014) authorizes the family court to order payment of litigation expenses such as attorney's fees to either party. When determining whether fees should be awarded, the court considers "(1) the party's ability to pay his/her own attorney's fee; (2) [the] beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the]

effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). Failing to cooperate and prolonging litigation can serve as an additional ground for awarding attorney's fees. *See Bodkin v. Bodkin*, 388 S.C. 203, 223, 694 S.E.2d 230, 241 (Ct. App. 2010). When determining the reasonableness of attorney's fees, the family court considers "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) [the] professional standing of counsel; (4) [the] contingency of compensation; (5) [the] beneficial results obtained; [and] (6) [the] customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). The family court can also consider a litigant's uncooperative and evasive behavior when determining the reasonableness of the fees. *See Spreeuw v. Barker*, 385 S.C. 45, 72–73, 682 S.E.2d 843, 857 (Ct. App. 2009) (holding although an attorney's fee award representing 40% of the husband's annual income is concerning, the award was not excessive because the family court also considered how the husband's uncooperative conduct during discovery and evasive answers regarding his finances greatly contributed to litigation costs). Appellate courts review a family court's award of attorney's fees de novo. *Stone v. Thompson*, 428 S.C. 79, 92, 833 S.E.2d 266, 272 (2019).

We find the family court considered the appropriate factors in awarding Mother attorney's fees. Mother obtained more beneficial results by prevailing on custody and in her contempt action. *See E.D.M.*, 307 S.C. at 476, 415 S.E.2d at 816 (stating the family court should consider the beneficial results obtained by the attorney). Our above modifications of the visitation schedule and Parenting Plan do not displace Mother's beneficial results. The court noted an attorney's fee award would not severely impact Father's financial condition because he testified he has the freedom to pursue business activities and to take entrepreneurial risks because of family support. *See id.* at 477, 415 S.E.2d at 816 (stating the family court should consider the award's effect on the parties' standard of living). The court noted both parties had the ability to pay their attorney's fees. *See id.* at 476–77, 415 S.E.2d at 816 (stating the family court should consider the parties' financial condition and ability to pay). Father prolonged the litigation by refusing to comply with the psychological evaluation and his conduct during the trial. He was evasive in responding to questions, especially relating to his employment and finances. The family court had to interrupt the proceedings many times to instruct Father to answer the attorney's questions or allow the attorney to ask questions. At one point, the family court instructed Father that he was flirting with contempt. *Fitzwater v. Fitzwater*, 396 S.C. 361, 372, 721 S.E.2d 7, 13 (Ct. App. 2011) (finding an award of partial attorney's fees to a party with a superior financial position was appropriate in light of all the *E.D.M.* factors and because the

obligated party was uncooperative and unnecessarily prolonged the case). Based on our de novo review, we find the record supports the family court's findings, and we affirm an award of attorney's fees to Mother.

However, we find the family court erred in setting the amount of Mother's attorney's fee award. The family court awarded Mother $5,400 of her incurred fee amount of $51,482.50. Custody cases involving relocation are difficult cases, and this trial involved ten witnesses, ninety-one exhibits, and required five days to complete, despite originally being scheduled for one. *See Latimer*, 360 S.C. at 380, 602 S.E.2d at 34 (stating relocation cases are among the most difficult the family court encounters). Further, we find Father's refusal to undergo a psychological evaluation and his conduct and evasiveness on the witness stand increased this case's difficulty and length. *See Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (stating the family court should consider "the nature, extent, and difficulty of the case" when determining the amount of awarded attorney's fees); *Spreeuw*, 385 S.C. 45, 72–73, 682 S.E.2d 843, 857 (considering a party's uncooperative and evasive behavior when determining the attorney's fee amount). Accordingly, we adjust Mother's awarded fees to $10,000.

## V. GAL Fees

Father appeals the family court's division of the GAL's fees. However, he does not cite any authority to support his argument. *See Bryson v. Bryson*, 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct. App. 2008) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."); *see also Butler v. Butler*, 385 S.C. 328, 343, 684 S.E.2d 191, 199 (Ct. App. 2009) (declining to address issues on the merits after finding the issues were abandoned on appeal because the appellant cited no statute, rule, or case to support his arguments and made conclusory statements without supporting authority). Accordingly, we affirm the family court's division of the GAL's fees.

## CONCLUSION

Based on the foregoing, the family court's order is

**AFFIRMED AS MODIFIED.**

**HUFF and MCDONALD, JJ., concur.**