**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Timothy Idiaghe, Respondent,

v.

Diana I. Idiaghe, Appellant.

Appellate Case No. 2024-000074

———

Appeal From Lexington County
Huntley S. Crouch, Family Court Judge

———

Unpublished Opinion No. 2025-UP-207
Heard June 3, 2025 – Filed June 23, 2025

———

**AFFIRMED**

———

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

G. Robin Alley, of Isaacs & Alley, LLP, and James B.
Richardson, Jr., both of Columbia, for Respondent.

Rebecca Brown West, of Harling & West, LLC, of
Lexington, for the Guardian ad Litem.

———

**PER CURIAM:** In this marital litigation, Diana Idiaghe (Mother) argues the
family court erred in: (1) failing to give proper weight to her allegations of

domestic violence before placing custody with Timothy Idiaghe (Father) and granting her only supervised visitation; (2) ruling certain testimony regarding her allegations of domestic abuse was not relevant and/or was inadmissible hearsay; (3) finding Mother's student loan debt was nonmarital; (4) ordering Mother to pay a portion of the guardian ad litem's (GAL's) attorney's fees; (5) finding the fees of the GAL were statutorily proper; (6) failing to strike the GAL's report; and (7) failing to allow Mother the opportunity to address the substance of her "motion to correct error" with respect to a pretrial order. We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1. The family court properly considered the parties' allegations of domestic violence within the totality of the circumstances applicable to this custody determination in finding the children's best interests would be served by awarding custody to Father and keeping Mother's supervised visitation schedule unchanged.[1] The family court's thorough and well-reasoned final order includes detailed findings addressing custody, and our de novo review reveals no error. *See Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019) ("Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings."). Mother failed to demonstrate that she is better suited to be named the children's primary caretaker, or in the alternative, why she should be awarded joint custody or unsupervised visitation.

Mother chose not to testify at the final hearing and failed to present credible evidence to suggest the award of custody to Father was contrary to the best interests of these children.[2] Mother's own father traveled from New Orleans to Lexington County to testify that Mother is "not going to take care of them because she's a professional liar, habitual liar. She manipulates people." Moreover, Mother's behavior toward these highly intelligent children, their studies, and their extracurricular activities was concerning.

Indeed, a counselor testified that once supervision of Mother's visitation began, the children were "markedly less stressed." The family court's order cogently analyzes the concerns expressed by one of the counselors:

> [Counselor] described [Father] as the voice of reason and
> stabilizer for the children. She described [Mother] as

[1] Both parties made claims against the other for physical abuse/cruelty.

[2] Although Mother elected not to testify, she presented other witnesses in her case.

explosive based upon her counseling with the eldest child.  She testified that the children do not feel as close to their [Mother] and are often fearful of what might happen to them when they visit with their [Mother].  The children have shown signs of anxiety when visiting with [Mother].  On several occasions, [Mother] has called law enforcement based on the children's actions and has threatened the children that law enforcement could take action against the children because of their behavior.  This has caused the children to be traumatized by [Mother's] actions in these instances.  Supervision of visitation makes the children feel more at ease that [Mother] will behave and her behavior will be non-confrontational during the visitation.  This allows the children to focus on their relationship with [Mother] while avoiding any upheaval.  [Counselor] stated [Mother] has shown lack of insight [as] to her relationship with the children [and explained Mother] would have to acknowledge her inappropriate behavior in the past with the children and a willingness to correct that behavior to be ready to engage with the children in therapy before [they] could engage in reconciliation counseling.  But based on [Counselor's] testimony, [Mother] minimally has shown concern but no acknowledgement of past matters of her treatment of the children. [Counselor] testified that all the children have fear of law enforcement and have been concerned that while they were visiting their [Mother], that their [Mother] would be calling law enforcement to take them to jail.  As part of the assessments, [Father] is never identified as an aggressor; however, [Mother] is reported to be an aggressor on more than one occasion.  The oldest child expressed to [Counselor] her concerns for [Mother's] Mental Health and inquired about [Mother] being in counseling.  The counselor testified that since [Mother's] visitation has been supervised, the coping skills of the children have significantly improved.[3]

---

[3] The middle child (Son) was more positive about visits with Mother than were his two sisters.  Yet, one document Mother submitted as a trial exhibit demonstrates

By contrast, the record establishes that Father has been supportive of the children's successes and education, is able to communicate with their educators, and works well with their medical providers. *See Klein v. Barrett*, 427 S.C. 74, 80, 828 S.E.2d 773, 776 (Ct. App. 2019) ("In a child custody case, the welfare of the child and what is in the child's best interest is the primary, paramount, and controlling consideration of the court." (quoting *McComb v. Conard*, 394 S.C. 416, 422, 715 S.E.2d 662, 665 (Ct. App. 2011))); *Clark v. Clark*, 423 S.C. 596, 605, 815 S.E.2d 772, 777 (Ct. App. 2018) ("While numerous prior decisions set forth criteria that are helpful in such a determination, there exist no hard and fast rules and the totality of circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." (quoting *Davenport v. Davenport*, 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975))); *Simcox-Adams v. Adams*, 408 S.C. 252, 260, 758 S.E.2d 206, 210 (Ct. App. 2014) ("In determining a child's best interest in a custody dispute, the family court should consider several factors, including: who has been the primary caretaker; the conduct, attributes, and fitness of the parents; the opinions of third parties, including the guardian ad litem, expert witnesses, and the children; and the age, health, and gender of the children.").

2.  The family court did not err in ruling certain testimony Mother sought to introduce as to her claim of domestic violence was not relevant and/or was hearsay.  Mother attempted to introduce testimony through a babysitter that Father was arrested at some point during the marriage (in either 2012 or 2020).[4]  While we do not disagree that a criminal record—if Father had one—could under

---

Son was concerned enough about Mother's behavior to record an incident in which she became angry and struck his sisters with a cooking utensil.  Mother then attacked Father when he attempted to intervene.  This report indicates bruising was observed on one daughter's left arm, but it was unknown if the other daughter had "any marks or bruises."  Father sustained "bruises on his chest, head and arms."  Although the record contains only a portion of this 2019 report, one stated concern is that "[Mother] has always been abusive towards her family[,] it's just getting more intense."

[4] Although the transcript reflects a date of 2020, other filings suggest Mother may have intended to ask about an incident from 2012.  In his appellate brief, Father states Mother is referring to "one of the times that she had [Father] arrested, then dropped her charge, a typical example of [Mother's] chronic abuse of the machinery of law enforcement."

appropriate circumstances be relevant, Mother failed to provide a certified copy of any conviction or proffer the challenged portion of the babysitter's testimony. Without an understanding of what this proposed testimony might have been, we are unable to consider Mother's claims of error on this point. *See Jamison v. Ford Motor Co.*, 373 S.C. 248, 260, 644 S.E.2d 755, 761 (Ct. App. 2007) ("It is well settled that a reviewing court may not consider error claimed in the exclusion of testimony unless the record on appeal shows fairly what the rejected testimony would have been.").

3. The family court did not err in finding Mother's student loan debt was nonmarital. Mother chose not to testify at the final hearing and failed to present any credible evidence—documentary or otherwise—to verify such loans or identify what portion might be deemed marital. Although Mother listed a student loan obligation on her financial declaration, she presented no evidence as to when this debt was incurred or for what purpose she used the funds. Thus, we agree with the family court that there is simply "no way to determine whether the debt is marital or non-marital based upon the financial declaration filed without additional evidence." *See Schultze v. Schultze*, 403 S.C. 1, 7, 741 S.E.2d 593, 597 (Ct. App. 2013) ("In dividing the marital estate, the family court must consider 'existing debts incurred by the parties or either of them during the course of the marriage.'" (quoting S.C. Code Ann. § 20-3-620(B)(13))); *id.* ("Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution."); *Jackson v. Jackson*, 432 S.C. 415, 431, 853 S.E.2d 344, 352 (Ct. App. 2020) ("[A] party cannot sit back at trial without offering proof, then come to this [c]ourt complaining of the insufficiency of the evidence to support the family court's findings." (alterations in original) (quoting *Honea v. Honea*, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct. App. 1987))); *Hudson v. Hudson*, 294 S.C. 166, 169, 363 S.E.2d 387, 389 (Ct. App. 1987) (noting the party seeking equitable distribution must present evidence supporting his or her claim).

4. The family court did not err in ordering Mother to pay a portion of the GAL's attorney's fees.[5] In light of Mother's obstructive behavior and serving—without the knowledge of her attorney—of a three-day deposition notice upon the GAL, the GAL's decision to hire counsel and seek a protective order was reasonable. The

---

[5] The family court declined to require reimbursement of the full $30,164.20 in attorney's fees and costs incurred by the GAL, however, the parties were ordered to repay the costs the GAL's counsel advanced to secure the attendance of trial witnesses. This was properly ordered on a pro rata basis, with Father to pay $737.00 and Mother to pay $363.00.

family court found Mother responsible only for her pro rata portion of certain trial witness fees and the $3,880.90 in attorney's fees and costs related to Mother's improper noticing of this deposition and the GAL's subsequent motion for a protective order. And, in the order addressing the GAL's motion for a protective order, the family court again admonished Mother for filing pleadings without her counsel's knowledge or approval. *See Shirley v. Shirley*, 342 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct. App. 2000) ("An award of [GAL] fees lies within the sound discretion of the [family court] and will not be disturbed on appeal absent an abuse of discretion.").

5. The family court did not err in finding the fees of the GAL were statutorily proper or in ordering that Mother pay a pro rata portion of these fees. The parties were aware that responsibilities for reimbursement would be assigned pro rata and that Mother would responsible for 33% of the GAL fees incurred. In its allocation, the family court found both parties had the ability to pay; however, it tasked Father with the majority of these fees despite Mother's unwillingness to cooperate with the GAL and other behavior noted throughout this record. *See* S.C. Code Ann. § 63-3-850(B) (2010) ("A guardian appointed by the court is entitled to reasonable compensation, subject to the review and approval of the court."). The family court twice granted the GAL's motions to increase the initial fee cap and noted in its order that the GAL "credibly testified that a majority of issues related to her investigation were due to [Mother's] conduct and positions." *See* S.C. Code Ann. § 63-3-850(A) (2010) (providing a process if the GAL determines it is necessary to exceed the fee initially authorized by the court); S.C. Code Ann. § 63-3-850(B) (In determining the reasonableness of the guardian's fees and costs, "the court must take into account: (1) the complexity of the issues before the court; (2) the contentiousness of the litigation; (3) the time expended by the guardian; (4) the expenses reasonably incurred by the guardian; (5) the financial ability of each party to pay fees and costs; and (6) any other factors the court considers necessary.").

6. Mother sought to strike the report of the GAL and claims her rights to due process were denied when she was prohibited from taking the improperly noticed deposition. Mother asserts in her briefing that "she argued extensively to the trial court that the [GAL] failed to adhere to the rules at S.C. Code Ann. 63-3-830 in that a party should have the right to cross examine any witness whose testimony forms the basis of the [GAL's] findings." But our review of the record reveals no evidence that the GAL "failed to adhere to the rules" (statutory or otherwise). Mother's refusal to cooperate with the GAL and efforts to obstruct the GAL's exercise of her duties began almost immediately. To the extent Mother's

arguments on this point are preserved, we find the family court properly exercised its discretion in handling Mother's deposition notice and the resulting protective order, in declining to strike the GAL's report, and in permitting Mother to extensively cross-examine the GAL (and other witnesses) at the merits hearing. *See Stone*, 428 S.C. at 91, 833 S.E.2d at 272 ("Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings.").

7.  Because Mother's argument on this point is conclusory and she failed to include in the record on appeal her "motion to correct error" alleged with respect to a pretrial order finding she violated Rule 11, SCRCP, we decline to address this issue.  *See* Rule 210(h), SCACR ("Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal."); *see also Helms Realty, Inc. v. Gibson-Wall Co.*, 363 S.C. 334, 339, 611 S.E.2d 485, 488 (2005) (reiterating that an appellant has the burden of providing a sufficient record and declining to review a jury charge not included in the record on appeal).

We commend the family court for its exemplary patience and temperament in this challenging case.

**AFFIRMED.**

**KONDUROS, MCDONALD, and VINSON, JJ., concur.**